IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JOSEPH SCOTT,                          )
         Plaintiff,                    )
                                 )
        v.                                  )        1:13CV834
                                 )
TOWN OF TAYLORTOWN,                     )
ULYSSES S.G. BARRETT, JR.,              )
JAMES LATTIMORE THOMPSON,               )
and SCIRRA DEVAUGHN JOHNSON,            )
         Defendants.                   )

## MEMORANDUM OPINION AND ORDER

BEATY, District Judge.

This matter is currently before the Court on a Motion to Dismiss [Doc. #13], pursuant to Federal Rule of Civil Procedure 12(b)(6), filed by Defendants Town of Taylortown, Ulysses S.G. Barrett, Jr., James Lattimore Thompson, and Scirra Devaughn Johnson (collectively "Defendants"). The individual Defendants (Defendant Barrett, Defendant Thompson, and Defendant Johnson) are all sued in both their individual and official capacities. In the underlying action, Plaintiff Joseph Scott ("Plaintiff") brings eight claims in connection with his alleged wrongful termination. For the reasons discussed below, this Motion [Doc. #13] is granted in part and denied in part. Specifically, the Court will dismiss all of Plaintiff's claims except the procedural due process claim.

## I.    FACTUAL BACKGROUND

The factual allegations of Plaintiff's Complaint [Doc. #1], taken as true for purposes of Defendants' Motion to Dismiss [Doc. #13], allege that Plaintiff began working for the Taylortown Police Department ("the Department") on or about May 2007. In March 2010,

Chief Damon Williams resigned as chief of police for the Department and appointed Plaintiff to serve as its interim chief of police until the vacancy for this position was filled.

Defendant Johnson, who also worked for the Department, stopped reporting to work shortly after Plaintiff's appointment as interim chief of police, but Defendant Johnson nevertheless continued to draw his regular monthly salary from Defendant Taylortown. Defendant Johnson was not on valid, legitimate, or recognized leave under the personnel policies of Defendant Taylortown. For these reasons, in a closed session meeting in May 2010, Plaintiff recommended to Defendant Taylortown's town council ("Taylortown council") that Defendant Johnson's employment be terminated. However, the Taylortown council decided not to issue any disciplinary sanction against Defendant Johnson.

Following this closed session meeting, Defendant Johnson began making false allegations of misconduct about Plaintiff to other council members in an effort to retaliate against Plaintiff. As a result of these allegations by Defendant Johnson, Defendant Barrett (mayor of Taylortown) and Defendant Thompson (councilmember and Defendant Taylortown's attorney) met with Plaintiff to interrogate him about Defendant Johnson's allegations, but found no evidence of misconduct by Plaintiff.

On September 20, 2010, the Taylortown council held a closed session meeting, in which Plaintiff was told that the council "wished to take the Police Department in a different direction" and that Plaintiff's services as interim chief of police were "no longer needed." (Compl. [Doc. #1] ¶ 29.) At no point during this meeting was Plaintiff told that his employment was terminated or that he had engaged in any misconduct or inefficient work performance.

Although Defendant Barrett informed Plaintiff at the meeting that the Taylortown council would provide Plaintiff with a "favorable letter of recommendation," Plaintiff nonetheless assumed that he would be returning to his prior position as sergeant until he found other employment, because he did not receive a written notice of termination, as was Defendant Taylortown's previous practice upon termination. (Compl. [Doc. #1] ¶ 31.)

On September 21, 2010, around 4:00 a.m., Plaintiff was awoken by persons banging on the front door of his residence, in Fayetteville, North Carolina. While the banging continued, Plaintiff received a call from a dispatcher informing him that officers from the Fayetteville Police Department were at his front door. When Plaintiff opened the front door to this banging, Defendant Johnson confronted Plaintiff, informing him that he, Defendant Johnson, was now the new police chief for Taylortown. Defendant Johnson also informed Plaintiff that he was there to "collect all of the police equipment that Taylortown had [ ] issued" to Plaintiff. (Compl. [Doc. #1] ¶ 34.) Although Plaintiff was uncertain whether he had in fact been terminated, Plaintiff complied with Defendant Johnson's demands by giving Defendant Johnson his patrol car keys, gun, badge, vest, and other police equipment, and told Defendant Johnson that he would turn in his uniform later that day. Defendant Johnson and another Taylortown officer traveled in a Taylortown police vehicle with officers from the Fayetteville Police Department, in order to carry out this confrontation for the "sole purpose [of] causing Plaintiff mental anguish and humiliation." (Compl. [Doc. #1] ¶ 38.)

Later that day, Plaintiff went to the Taylortown police station to return the remaining police equipment that had been issued to him and to meet with Defendant Thompson to talk

about the pre-dawn confrontation and determine whether Plaintiff's employment was terminated. Defendant Thompson, a councilmember for the Taylortown council, responded by telling Plaintiff that he didn't "have time for this," and refused to discuss the incident any further with Plaintiff. (Compl. [Doc. #1] ¶ 41.) Because Defendant Thompson refused to discuss the issue with Plaintiff or otherwise take remedial action regarding Defendant Johnson's behavior, Plaintiff contends that Defendant Thompson ratified Defendant Johnson's actions, even if he and other town officials did not know ahead of time that the confrontation was going to take place.

In October 2010, Plaintiff met with Defendant Barrett, Defendant Thompson, and the town clerk. At this meeting, Plaintiff was informed that Defendant Johnson claimed that "something had happened" to the computer in the Department, that an order of supplies was missing, and that either Plaintiff or the former police chief had taken these items. (Compl. [Doc. #1] ¶ 43.) These allegations were fabricated and made in an effort by Defendant Johnson to retaliate against Plaintiff. Furthermore, despite multiple requests by Plaintiff to return various personal items he left in his office to him, Defendant Taylortown has refused to return the items to Plaintiff. These items include a digital camera, Motorola earpiece and microphone, gang book for law enforcement, CD for learning Spanish, sunglasses, personal files and papers, NCAWARE training materials, GangNet training materials, and field training officer materials.

In addition, on or about September 21, 2010, Defendant Johnson, as an official representative of Defendant Taylortown, prepared an F-5B Report of Separation ("the F-5B") regarding Plaintiff's separation from employment with Taylortown. The F-5B falsely lists that

Plaintiff was dismissed for "misconduct," and falsely asserts that Plaintiff "destroyed Departmental Files need[ed] to operate the department after learning he was not selected to chief." (Compl. [Doc. #1] ¶ 53.) At the time Defendant Johnson prepared this F-5B, he knew or should have known that such assertions of misconduct were false. The F-5B also indicates that Defendant Taylortown "would not consider this individual for reappointment" and "would not recommend employment elsewhere as a criminal justice officer." (Compl. [Doc. #1] ¶ 55.) This F-5B was filed with the North Carolina Criminal Justice Education and Training Standards Commission

Finally, Plaintiff has alleged that shortly after Plaintiff's termination, Defendants falsely reported to the local newspaper, The Pilot, that Plaintiff was fired from his job because of "misconduct." (Compl. [Doc. #1] ¶ 50.) At the time of this false reporting, Defendants knew or should have known that such a statement was false, deceptive, and misleading. After receiving this false statement from Defendants about Plaintiff, Plaintiff alleges that The Pilot published an article on October 1, 2010, which falsely claimed that Plaintiff had been terminated by Taylortown for "misconduct." (Compl. [Doc. #1] ¶ 51.) Although Plaintiff alleges that this October 1, 2010 article states that Plaintiff was terminated for "misconduct," Defendants have attached a copy of an article by The Pilot dated October 1, 2010, which does not mention misconduct—instead stating that "[n]o specific reasons were cited" as to Plaintiff's termination and that Defendant Barrett said "[w]e decided to go a different way." (Ex. A – Mot. to Dismiss Br. [Doc. #14-1], at 1.) Plaintiff does not dispute the authenticity of this article, nor does he contend that he references a different article published by The Pilot on October 1, 2010.

On September 20, 2013, Plaintiff filed this action pursuant to 42 U.S.C. § 1983, alleging eight claims against Defendants: (1) violation of procedural due process, (2) violation of substantive due process, (3) "retaliation for exercise of constitutional right," (4) violation of equal protection, (5) wrongful termination, (6) tortious interference with contract, (7) invasion of privacy, and (8) civil conspiracy. Defendants have filed a Motion to Dismiss [Doc. #13], asking the Court to dismiss all of Plaintiffs' claims for failure to state a claim. This Motion is now ripe for review.

## II.    STANDARD OF REVIEW

In reviewing a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the Fourth Circuit has directed that courts "'take the facts in the light most favorable to the plaintiff,' but '[they] need not accept the legal conclusions drawn from the facts,' and '[they] need not accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008) (quoting Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556, 127 S. Ct. 1955). "The plausibility standard is not akin

to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" Id. (quoting Twombly, 550 U.S. at 557, 127 S. Ct. 1955) (citations omitted). Thus, dismissal of a complaint is proper where a plaintiff's factual allegations fail to "produce an inference of liability strong enough to nudge the plaintiff's claims 'across the line from conceivable to plausible.'" Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 256 (4th Cir. 2009) (quoting Iqbal, 556 U.S. at 683, 129 S. Ct. 1937).

Furthermore, the Court may consider the attachments to the Complaint or the Motion to Dismiss [Doc. #13] if they are incorporated by reference into the Complaint; otherwise, the Court may only consider evidence outside the pleadings if the Court converts the proceeding to one for summary judgment. Bailey v. Va. High School League, Inc., 488 F. App'x 714, 715-16 (4th Cir. 2012) ("In deciding whether a complaint will survive a motion to dismiss, a court evaluates the complaint and any documents attached or incorporated by reference[; h]owever, the district cannot go beyond these documents on a Rule 12(b)(6) motion without converting the motion into one for summary judgment." (citations omitted)); see Bala, 532 F. App'x at 334 ("The district court may go beyond the complaint and attached documents, which constitute 'the pleadings,' in a Rule 12(b)(6) proceeding if the court converts the proceeding to one for summary judgment." (citing Fed. R. Civ. P. 12(d))). Therefore, the Court will consider Plaintiff's evidence of the F-5B attached to Plaintiff's Complaint. (Ex. A – Compl. [Doc. #1-1].) As such, the Court may consider Defendants' evidence of the October 1, 2010 article published by The

<u>Pilot</u> (Ex. A – Mot. to Dismiss Br. [Doc. #14-1]), which Plaintiff references in his Complaint and the authenticity of which Plaintiff does not dispute.

III.    DISCUSSION

    A.    Procedural Due Process

Plaintiff brings his first claim pursuant to § 1983, alleging that he has been deprived of his procedural due process rights, in violation of the Fourteenth Amendment of the United States Constitution.  He also alleges a violation of Article I, Section 1 and 19 of the North Carolina Constitution.  Plaintiff bases this cause of action on the allegations that Defendants' false statements that he was terminated for "misconduct" were disseminated to the public, without any opportunity for Plaintiff to challenge those false statements.  (Compl. [Doc. #1] ¶¶ 66-68.)  Plaintiff also alleges that these actions caused irreparable harm to Plaintiff, and resulted in him being unable to procure any long-term employment within his chosen profession as a law enforcement officer.  (<u>Id.</u> ¶¶ 69-70.)

The Due Process Clause of the Fourteenth Amendment provides, in part: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.  In general, in order to succeed on a due process claim, whether substantive or procedural, a plaintiff must show: (1) that he "has a constitutionally protected 'liberty' or 'property' interest"; and (2) that he "has been 'deprived' of that protected interest by some form of 'state action.'" <u>Stone v. Univ. of Md. Med. Sys. Corp.</u>, 855 F.2d 167, 172 (4th Cir. 1988) (citations omitted); <u>see also</u> <u>Woods v. City of Wilmington</u>, 125 N.C. App. 226, 230, 480 S.E.2d 429, 432 (1997) ("The 'law of the land' clause [of the North Carolina Constitution] is

considered 'synonymous' with the Fourteenth Amendment to the United States Constitution."). An individual's liberty interest in his reputation is only sufficient "to invoke the procedural protection of the Due Process Clause" if combined with "some more tangible interest[ ] such as employment." Paul v. Davis, 424 U.S. 693, 701, 96 S. Ct. 1155, 47 L. Ed. 2d 405 (1976).

Plaintiff here essentially contends that Defendants have deprived him of his Fourteenth Amendment liberty interests in his reputation and his ability to obtain future employment without an opportunity for a name-clearing hearing or other opportunity to challenge the false accusations. "Section 1983 provides a cause of action for public employees who are deprived of their constitutionally-protected property or liberty interests without due process of law." Harrell v. City of Gastonia, 392 F. App'x 197, 202-03 (4th Cir. 2010). Specifically, "a Fourteenth Amendment 'liberty interest is implicated by public announcement of reasons for an employee's discharge.'" Sciolino v. City of Newport News, 480 F.3d 642, 645-46 (4th Cir. 2007) (quoting Johnson v. Morris, 903 F.2d 996, 999 (4th Cir.1990)). This type of claim "arises from the combination of two distinct rights protected by the Fourteenth Amendment: (1) the liberty to engage in any of the common occupations of life; and (2) the right to due process [w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him." Id. at 646 (citations and internal quotation marks omitted). "To state this type of liberty interest claim under the Due Process Clause, a plaintiff must allege that the charges against him: (1) placed a stigma on his reputation; (2) were made public by the employer; (3) were made in conjunction with his termination or demotion; and (4) were false." Id. (citing Stone v. Univ. of Md. Med. Sys. Corp., 855 F.2d 167, 172 n. 5 (4th Cir. 1988).

Defendants contend that Plaintiff fails to state a claim, because the two allegedly public disclosures of the false accusations, the October 1, 2010 article in <u>The Pilot</u> and the F-5B, both fail to support Plaintiff's procedural due process claim. Specifically, Defendants contend that the article fails because it does not in fact state that Plaintiff was discharged for "misconduct." Plaintiff does not dispute that the article in <u>The Pilot</u> does not in fact state that Plaintiff was discharged for "misconduct." Because the allegations of misconduct from the Complaint are not actually present in the October 1, 2010 article published in <u>The Pilot</u>,[1] the Court finds that the article's publication cannot be a basis for Plaintiff's procedural due process claim.

In addition, Defendants contend that the F-5B fails to support Plaintiff's procedural due process claim, because it has not been made public by the employer or viewed by any law enforcement agency, as required for this kind of procedural due process claim. However, Plaintiff contends that the F-5B is a public record under the Public Records Act, and therefore, has been publicly disclosed.

The North Carolina Administrative Code states that "[a]n agency separating a person from employment or appointment as a criminal justice officer shall, not later than 10 days after separation, forward to the Commission a properly completed [F-5B] Report of Separation." 12 N.C. Admin. Code 9C.0305 (2013). North Carolina courts do not appear to have addressed

_____

[1] Defendants attach this news article to their Motion to Dismiss Brief [Doc. #14-1]. Plaintiff does not offer any reason why the Court should doubt the exhibit's authenticity. Nor does Plaintiff contend that he in fact was referencing a different article published by <u>The Pilot</u> on October 1, 2010. For these reasons, and because Plaintiff incorporates this article by reference into his Complaint, the article submitted by Defendants may be considered by this Court at the Motion to Dismiss stage. <u>See</u> <u>Bailey v. Va. High School League, Inc.</u>, 488 F. App'x 714, 715-16 (4th Cir. 2012).

the question of whether an F-5B is a public record or not.  See Wuchte v. McNeil, 130 N.C. App. 738, 744, 505 S.E.2d 142, 146 (1998) ("Having found the statements included in the [F-5B] Report of Separation insufficient to implicate plaintiff's liberty interest in seeking future employment, we need not reach the issue of whether the report was made public.").

Personnel files are arguably less public than F-5Bs, as they contain a much more detailed history and many more documents pertaining to an employee's employment.  See 12 N.C.A.C. 9C.0307 (detailing various items that a law enforcement officer's personnel files must include, including things like a written summary of the officer's psychological examination results and the officer's medical history statement and medical examination report).  Therefore, at a minimum, the F-5B is at least as public as Plaintiff's personnel file.  In addressing when personnel files may be a basis for this kind of procedural due process claim, the Fourth Circuit held that a former employee must allege "a likelihood that prospective employers (i.e., employers to whom he will apply) or the public at large" will inspect the file.  Sciolino, 480 F.3d at 650.  A plaintiff can meet this standard either by alleging that the defendant employer has a practice of releasing personnel files to all inquiring employers or by alleging that the defendant employer releases personnel files only to certain inquiring employers, including at least one employer to which he intends to apply to for employment.  Id.  In either case, where the document is a personnel file, a prospective employer must be likely to request the file from the defendant employer.  Id.  As such, Defendants' contention that Plaintiff must have alleged that he has actually applied to a law enforcement agency or that a law enforcement agency has actually

viewed the F-5B is not correct. Rather, Plaintiff's claim is sufficient if a prospective employer is likely to request the file from the defendant employer.

Because an F-5B must be filed when a law enforcement officer's employment is terminated, it is likely that a prospective employer, seeing Plaintiff's law enforcement experience, would seek out a mandatory filing addressing why Plaintiff was terminated from his previous law enforcement position. Furthermore, Plaintiff did allege that he "has been unable to procure any long-term employment within his chosen profession as a law enforcement officer," which, construed in the light most favorable to Plaintiff, may imply that he has tried to find such employment. (Compl. [Doc. #1] ¶ 70.) Therefore, at this stage, Plaintiff has sufficiently pled that there is a likelihood that prospective employers will inspect the F-5B.

Plaintiff also contends that he has not had an opportunity to clear his name from the allegations in the F-5B.[2] The Court notes that the Due Process Clause "is not a guarantee against incorrect or ill-advised personnel decisions." Sciolino, 480 F.3d at 649 (quoting Bishop v. Wood, 426 U.S. 341, 350, 96 S. Ct. 2074, 48 L. Ed. 2d 684 (1976)) (internal quotation marks omitted). Instead, procedural due process requires simply the opportunity to be heard "at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). As such, "[i]f the public employee can establish a protected liberty interest under this framework, the employee is entitled to due process, which in this context involves a 'name-clearing hearing.'" Harrell, 392 F. App'x at 203. Therefore, Plaintiff's

_____

[2] To the extent that defense counsel told the Court at the hearing that a name-clearing opportunity has in fact been offered to Plaintiff, such evidence is not appropriately before the Court at this stage in the litigation.

allegation that he has not yet received the requisite due process—that is, a name-clearing hearing—is a sufficient denial of due process, in light of the liberty interest at issue, to state a claim upon which relief may be granted.

With regard to Plaintiff's state due process claim, "[t]he term 'law of the land' as used in Article I, Section 19, of the Constitution of North Carolina, is synonymous with 'due process of law' as used in the Fourteenth Amendment to the Federal Constitution." Patmore v. Town of Chapel Hill, 757 S.E.2d 302, 304 (N.C. Ct. App. 2014) (quoting In re Moore, 289 N.C. 95, 98, 221 S.E.2d 307, 309 (1976)). Therefore, to the extent that Plaintiff has stated a federal procedural due process claim, the North Carolina Constitution affords Plaintiff the same degree of protection. Thus, the Court will deny Defendants' Motion to Dismiss [Doc. #13] as to Plaintiff's procedural due process claim under both the U.S. Constitution and the North Carolina Constitution.

B.     Substantive Due Process

Plaintiff also brings a substantive due process claim, pursuant to § 1983 and the Fourteenth Amendment of the U.S. Constitution. This cause of action also cites Article I, Sections 1 and 19 of the North Carolina Constitution. Plaintiff contends that Defendants' actions and retaliation against Plaintiff were "arbitrary and so egregious that those actions objectively 'shock the conscience' of reasonable persons within the constitutional jurisprudence and/or interfered with rights implicit [to] the concept of ordered liberty." (Compl. [Doc. #1] ¶ 75.) Defendants, however, contend that Plaintiff fails to state a claim here, because substantive due process does not apply where a specific amendment provides an explicit textual source of

constitutional protection against a particular kind of government behavior. (Mot. to Dismiss Br. [Doc. #14], at 8.)

"Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" Albright v. Oliver, 510 U.S. 266, 273, 114 S. Ct. 807, 813, 127 L. Ed. 2d 114 (1994) (quoting Graham v. Connor, 490 U.S. 386, 395, 109 S. Ct. 1865, 104 L.Ed.2d 443 (1989)). Although Plaintiff attempts to distinguish Albright, as that case is one in which the amendment providing the explicit textual source of constitutional protection is the Fourth Amendment, rather than the Fourteenth Amendment, Plaintiff does not cite any authority as to why that distinction is meaningful. Indeed, the Fourth Circuit has explicitly held that where a right is protected under procedural due process, this substantive due process doctrine operates in the same way—foreclosing the Court from recasting the same factual basis as a claim for substantive due process. E.g., Jean v. Collins, 221 F.3d 656, 674 (4th Cir. 2000). Therefore, because the Court has already concluded that Plaintiff has stated a claim for procedural due process, a substantive due process claim based on the same facts is unavailable.

As previously explained, due process protections under the North Carolina Constitution are comparable to those provided under the U.S. Constitution. See Patmore, 757 S.E.2d at 304. Therefore, because Plaintiff's federal substantive due process claim is foreclosed, so too is any comparable claim under the North Carolina Constitution. As such, Defendants' Motion to Dismiss [Doc. #13] is granted as to Plaintiff's federal and state substantive due process claims.

C.     Retaliation for Exercise of Constitutional Right to Free Speech

Defendants contend that this cause of action fails to state a claim because two requirements to establish a free speech retaliation claim are missing: (1) Plaintiff's speech was not related to a matter of public concern, and (2) Plaintiff was not speaking as a public citizen. Plaintiff concedes that he was not speaking as a public citizen, and also concedes that he therefore has not stated a claim upon which relief may be granted. (Resp. to Mot. to Dismiss [Doc. #18], at 11.) As such, the Court grants Defendants' Motion to Dismiss [Doc. #13] as to this free speech retaliation claim.

D.     Equal Protection

Plaintiff's fourth claim for relief is an equal protection claim under the "class of one" theory, pursuant to § 1983 and the Fourteenth Amendment of the U.S. Constitution. Plaintiff states an intent to also bring this cause of action under Article I, Section 19 of the North Carolina Constitution. Plaintiff contends that Defendants' "acts of reporting false information" were "irrational, arbitrary, and motivated exclusively by ill will against Plaintiff," without any relation to any legitimate state objective. (Compl. [Doc. #1] ¶¶ 84-85.) Defendants contend that Plaintiff's federal equal protection claim must fail, because the U.S. Supreme Court has expressly held that "the class-of-one theory of equal protection does not apply in the public employment context," and because the same analysis applies to the state equal protection claim. (Mot. to Dismiss Br. [Doc. #14], at 12-13.)

Defendants are correct that the Supreme Court has foreclosed the possibility of a class-of-one theory of equal protection in the public employment context. Engquist v. Oregon Dep't of Agr., 553 U.S. 591, 607, 128 S. Ct. 2146, 170 L. Ed. 2d 975 (2008) ("In concluding that the class-of-one theory of equal protection has no application in the public employment context—and that is all we decide—we are guided, as in the past, by the 'common-sense realization that government offices could not function if every employment decision became a constitutional matter.'" (quoting Connick v. Myers, 461 U.S. 138, 143, 103 S. Ct. 1684, 75 L.Ed.2d 708 (1983))). Although Plaintiff attempts to distinguish Engquist's holding as one that is specific to termination decisions by public agencies, Engquist is not so narrow:

> If, as Engquist suggests, plaintiffs need not claim discrimination on the basis of membership in some class or group, but rather may argue only that they were treated by their employers worse than other employees similarly situated, any personnel action in which a wronged employee can conjure up a claim of differential treatment will suddenly become the basis for a federal constitutional claim. Indeed, an allegation of arbitrary differential treatment could be made in nearly every instance of an assertedly wrongful employment action—*not only hiring and firing decisions, but any personnel action, such as promotion, salary, or work assignments*—on the theory that other employees were not treated wrongfully. On Engquist's view, every one of these employment decisions by a government employer would become the basis for an equal protection complaint. . . . In short, ratifying a class-of-one theory of equal protection in the context of public employment would impermissibly "constitutionalize the employee grievance." "The federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies."

Id. at 607-09 (citations omitted) (emphasis added). As such, Plaintiff's federal equal protection claim based on a class-of-one theory is unavailable to him in this public employment context.

Furthermore, the Supreme Court of North Carolina has held that "the guarantee of equal protection provided in the Fourteenth Amendment to the Federal Constitution has been

expressly incorporated in Article I, Section 19 of the N.C. Constitution, and thus the same analysis may be applied to both." Toomer v. Garrett, 155 N.C. App. 462, 476, 574 S.E.2d 76, 88 (2002) (citing Richardson v. N.C. Dept. of Correction, 345 N.C. 128, 134, 478 S.E.2d 501, 505 (1996); S.S. Kresge Co. v. Davis, 277 N.C. 654, 178 S.E.2d 382 (1971); Hajoca Corp. v. Clayton, 277 N.C. 560, 178 S.E.2d 481 (1971)). Therefore, as the same analysis under the federal equal protection claim applies in the state equal protection claim, Plaintiff's state equal protection claim fails for the same reason. As such, the Court will grant Defendants' Motion to Dismiss [Doc. #13] with regard to both Plaintiff's federal and state equal protection claims under a "class of one" theory.

E.      Wrongful Discharge

Plaintiff asserts a wrongful discharge claim under North Carolina law, based on his allegation that he was terminated because he reported illegal and fraudulent conduct by Defendant Johnson to the other Defendants. (Compl. [Doc. #1] ¶ 88.) Defendants contend that Plaintiff fails to state a claim for wrongful discharge, in part because he does not allege a valid public policy that was violated by Plaintiff's termination. Specifically, Defendants contend that because Plaintiff relies on the same facts as those alleged in his free speech retaliation claim, Plaintiff's concession that he has failed to state a claim under that basis forecloses this claim as well.

"North Carolina is an employment-at-will state." Kurtzman v. Applied Analytical Indus., 347 N.C. 329, 331, 493 S.E.2d 420, 422 (1997). However, the North Carolina Supreme Court recognizes a public policy exception to the employment-at-will doctrine. Garner v. Rentenbach

Constructors Inc., 350 N.C. 567, 570, 515 S.E.2d 438, 440 (1999) (citing Coman v. Thomas Mfg. Co., 325 N.C. 172, 175, 381 S.E.2d 445, 447 (1989)).  Upon suffering a violation of an express policy declaration contained in the North Carolina General Statutes, an individual can bring a wrongful discharge claim under this public policy exception.  Amos v. Oakdale Knitting Co., 331 N.C. 348, 353, 416 S.E.2d 166, 169 (1992).  However, "something more than a mere statutory violation is required to sustain a claim of wrongful discharge under the public-policy exception. An employer wrongfully discharges an at-will employee if the termination is done for an unlawful reason or purpose that contravenes public policy."  Blakeley v. Town of Taylortown, 756 S.E.2d 878, 886 (N.C. Ct. App. 2014) (quoting Garner v. Rentenbach Constructors Inc., 350 N.C. 567, 571, 515 S.E.2d 438, 441 (1999)) (internal quotation marks omitted).

The North Carolina Court of Appeals has held that "[a] complaint for wrongful discharge must allege a violation of a specific public policy."  McQueen v. City of Hamlet, 208 N.C. App. 282, 702 S.E.2d 555 (2010); see also Considine v. Compass Grp. USA, Inc., 145 N.C. App. 314, 321-22, 551 S.E.2d 179, 184 (2001) ("[Plaintiff] failed to identify any specified North Carolina public policy that was violated by defendant in discharging plaintiff. The complaint does not allege that defendant's conduct violated any explicit statutory or constitutional provision, nor does it allege defendant encouraged plaintiff to violate any law that might result in potential harm to the public. . . . [Plaintiff] fails to allege [how] defendant's alleged conduct . . . is in violation of North Carolina public policy. . . .  In light of the case law that cites specific conduct by a defendant that violated a specific expression of North Carolina public policy, we hold that plaintiff's complaint does not state a claim for wrongful discharge." (citing Teleflex Info. Sys.,

Inc. v. Arnold, 132 N.C. App. 689, 513 S.E.2d 85 (1999))). Federal courts have recently applied this same pleading standard when plaintiffs bring a wrongful discharge in violation of public policy claim under North Carolina law. E.g., Warren v. Smithfield Packing Co., Inc., 5:14-CV-71-D, 2014 WL 1691513, at *1 (E.D.N.C. Apr. 29, 2014) ("Because [the plaintiff]'s complaint fails to cite a specific North Carolina statute or a specific provision in the North Carolina Constitution as the source of North Carolina's public policy, [the plaintiff] fails to state a claim upon which relief can be granted." (citations omitted)); id. at *2 (noting that a federal court "may not create or expand North Carolina public policy); Griggs v. Casual Corner Grp., Inc., 3:02CV277, 2005 WL 1983888, at *12 (W.D.N.C. Aug. 10, 2005) ("In order to establish a claim for wrongful discharge in violation of public policy, the employee must demonstrate that the defendant's conduct violated an explicit statutory or constitutional provision, or that the employer encouraged the employee to violate a law that would result in harm to the public, thereby violating public policy." (citations omitted).)

Here, this cause of action does not identify what specific public policy Defendants violated. The facts alleged in this claim mirror those alleged in Plaintiff's free speech retaliation claim, which Plaintiff concedes fails to state a claim. Although termination resulting from reporting illegal and fraudulent conduct to one's employer can be a basis for a wrongful discharge claim in violation of public policy, that does not change the requirement that Plaintiff is still required to plead the specific public policy that Defendants' actions violated. For example, in Combs v. City Electric Supply Company, the North Carolina Court of Appeals concluded that the trial court erred in granting defendants' motion for a directed verdict as to

a claim for wrongful discharge in violation of public policy where the plaintiff presented evidence that his discharge was in retaliation for reporting to the defendant's management that the defendant engaged in illegal and fraudulent activity by "stealing from its customers' accounts." 203 N.C. App. at 79, 80-83 690 S.E.2d at 723-25. However, the Combs plaintiff expressly cited two specific North Carolina statutes that the defendant allegedly violated in carrying out the conduct that the plaintiff was terminated for reporting. Id. at 80, 690 S.E.2d at 723. In contrast, Plaintiff here has not identified what public policy or statute that was violated in the conduct reported by Plaintiff. Nor has Plaintiff identified what public policy Defendants allegedly violated in terminating his employment, if not on the basis of a free speech retaliation claim. As such, the Court will grant Defendants' Motion to Dismiss [Doc. #13] as to Plaintiff's wrongful termination claim.

F.      Tortious Interference with Contract

Defendants contend that Plaintiff's tortious interference with contract claim fails, in part because the statute of limitations has run. Plaintiff concedes that the statute of limitations for a tortious interference of contract claim is three years, but does not explain why, or even assert that, the statute of limitations has not run on his claim.

The statute of limitations period for a tortious interference with contract claim in North Carolina is indeed three years. Philips v. Pitt Cnty. Mem'l Hosp. Inc., 731 S.E.2d 462, 468-69 (N.C. Ct. App. 2012) ("Plaintiff's complaint was not filed until . . . more than three years after [the] allegedly tortious conduct, and thus this claim is barred by [N.C. General Statute §] 1-52(1)."). From the face of Plaintiff's Complaint, it appears evident that his tortious interference

with contract claim is based on statements made by Defendant Johnson "for the exclusive purpose of getting Plaintiff terminated from employment . . . ." (Compl. [Doc. #1] ¶ 93.) Although Plaintiff does not allege a specific date for these statements (Id. ¶ 27), he states that they began sometime after a May 2010 closed session meeting, and it stands to reason that if the alleged tortious interference occurred as a result of statements made "for the exclusive purpose of getting Plaintiff terminated," then such statements would have occurred prior to Plaintiff's termination. Plaintiff does not dispute Defendants' contention that Plaintiff's termination occurred on September 20, 2010 (even if Plaintiff at the time was unsure of his employment status on that date). (See id. ¶¶ 29-31; Ex. A – Compl. [Doc. #1-1] (listing date of final separation as September 20, 2010)). Plaintiff also does not dispute Defendants' contention that the statements at issue in this claim must have occurred prior to September 20, 2010.

As Plaintiff filed this Complaint on September 20, 2013, and the statements at issue occurred prior to September 20, 2010, the cause of action began accruing *before* September 20, 2010, and therefore, the three-year statute of limitations had run by the time Plaintiff filed his Complaint on September 20, 2013. As such, this Court will grant Defendants' Motion to Dismiss [Doc. #13] as to Plaintiff's tortious interference with contract claim.

G.     Invasion of Privacy

Plaintiff next brings a claim of invasion of privacy by intrusion into seclusion.[3] Defendants contend that Plaintiff fails to state a claim because the intrusion alleged is not "highly offensive to a reasonable person," as is required under North Carolina law. (Mot. to Dismiss Br. [Doc. #14], at 21-22 (citing Keyzer v. Amerlink, Ltd., 173 N.C. App. 284, 288, 618 S.E.2d 768, 771 (2005), aff'd, 360 N.C. 397, 627 S.E.2d 462 (2006)).) Plaintiff responds that the conduct alleged is indeed egregious enough to be highly offensive to a reasonable person.

"The tort of invasion of privacy by intrusion into seclusion is recognized in North Carolina and is defined as the intentional intrusion "'physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns . . . [where] the intrusion would be highly offensive to a reasonable person.'"" Toomer, 155 N.C. App. at 479, 574 S.E.2d at 90 (quoting Miller v. Brooks, 123 N.C. App. 20, 26-27, 472 S.E.2d 350, 354 (1996)). "The kinds of intrusions that have been recognized under this tort include 'physically invading a person's home or other private place, eavesdropping by wiretapping or microphones, peering through windows, persistent telephoning, unauthorized prying into a bank account, and opening personal mail of another.'" Id. at 479-80, 574 S.E.2d at 90 (quoting Hall v. Post, 85 N.C. App. 610, 615, 355 S.E.2d 819, 823 (1987), rev'd on other grounds, 323 N.C. 259, 372 S.E.2d 711 (1988)).

Plaintiff does not cite any support for his contention that the facts alleged as to the 4:00 a.m. confrontation at his home amount to conduct so egregious as to be highly offensive to a

_____

[3] Although Plaintiff's Complaint [Doc. #1] does not specify what type of invasion of privacy action he is bringing, both Defendants and Plaintiff both argue as if this claim is an intrusion into seclusion invasion of privacy claim. (See Mot. to Dismiss Br. [Doc. #14], at 21-22; Resp. to Mot. to Dismiss [Doc. #18], at 17-18.) Therefore, the Court will also treat this claim as if it is an intrusion into seclusion invasion of privacy claim.

reasonable person. Plaintiff alleges that he was awoken at his home at 4:00 a.m. to a loud knock on the door, told that he was no longer employed as police chief, asked to tender the police equipment he had at his property, and called by dispatcher once at the same time. (Compl. [Doc. #1] ¶¶ 97-98.) However, Plaintiff does not offer any precedent or case law to support his contention that such facts rise to the level of *highly* offensive. Indeed, he does not allege that Defendant Johnson or anyone with Defendant Johnson physically invaded Plaintiff's home, peered through his windows, persistently telephoned, eavesdropped, or obtained unauthorized access to any private records of Plaintiff's. While the actions alleged by Plaintiff may be unpleasant, Plaintiff does not offer any precedent or case law to support his contention that such facts rise to the level of *highly* offensive. Therefore, the Court will grant Defendants' Motion to Dismiss [Doc. #13] as to Plaintiff's invasion of privacy claim.

H.     Civil Conspiracy

Plaintiff's last claim is one for civil conspiracy, alleging that Defendants acted "in concert" to cause harms and losses to Plaintiff in violation of Plaintiff's rights. Defendants contend that this claim fails for a number of reasons, including that such a claim is barred by the intracorporate conspiracy doctrine. Plaintiff does not address this argument in his Response.

"To create civil liability for conspiracy there must have been a wrongful act resulting in injury to another committed by one or more of the conspirators pursuant to the common scheme and in furtherance of the objective." State ex rel. Cooper v. Ridgeway Brands Mfg., LLC, 362 N.C. 431, 444, 666 S.E.2d 107, 115 (2008) (quoting Henry v. Deen, 310 N.C. 75, 87, 310 S.E.2d 326, 334 (1984)). A complaint sufficiently states a claim for civil conspiracy under

North Carolina law when it alleges: "(1) a conspiracy, (2) wrongful acts done by certain of the alleged conspirators in furtherance of that conspiracy, and (3) injury as a result of that conspiracy." Id. (citing Muse v. Morrison, 234 N.C. 195, 198, 66 S.E.2d 783, 785 (1951)).

The intracorporate conspiracy doctrine stems from the requirement that a conspiracy necessarily must have multiple conspirators, and if all alleged conspirators are acting on behalf of a corporation, such a conspiracy must fail, as a corporation cannot conspire with itself. Buschi v. Kirven, 775 F.2d 1240, 1251-53 (4th Cir. 1985); Fox v. City of Greensboro, 807 F. Supp. 2d 476, 499 (M.D.N.C. 2011). This doctrine is also applicable to municipalities. Fox, 807 F. Supp. 2d at 499 (citing Iglesias v. Wolford, 539 F. Supp. 2d 831, 835-36 (E.D.N.C. 2008)).

Plaintiff clarified in his Response that the circumstances on which he is relying on as the basis for his civil conspiracy claim are those surrounding the 4:00 a.m. confrontation at his home, the F-5B, the refusal to return his personal property, the refusal to discipline Defendant Johnson for his actions, and the ratification of Defendant Johnson's[4] wrongful acts. (Resp. to Mot. to Dismiss [Doc. #18], at 18.) However, there can be no conspiracy if the actions complained of were taken in the course of the Defendants' official duties as employees of Defendant Taylortown. See Fox, 807 F. Supp. 2d at 499 ("The remaining Defendants were City employees at all relevant times, and they allegedly took all actions relevant to the § 1985 claims "by virtue of their authority as agents for the City of Greensboro" and "were acting in the performance of official duties." Consequently, under the intracorporate conspiracy doctrine,

---

[4] Plaintiff's Response states that Defendant Barrett and "Lattimore" (the middle name of Defendant Thompson) "authorized or ratified the wrongful acts of Scott." (Resp. to Mot. to Dismiss [Doc. #18], at 18.) It seems clear that Plaintiff intended instead to refer to the ratification of the wrongful acts of *Defendant Johnson*.

these Defendants could not have conspired among themselves." (citations omitted)). Furthermore, "merely suing the officers, employees, or agents in their individual capacities does not change th[is] result." Id. at 499 (citing Buschi, 775 F.2d at 1252).

Because the intracorporate conspiracy doctrine precludes a civil conspiracy between Defendants, the Court will grant Defendants' Motion to Dismiss [Doc. #1] as to Plaintiff's civil conspiracy claim.

IV.    CONCLUSION

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss [Doc. #13] is hereby GRANTED IN PART and DENIED IN PART.  Specifically, all of Plaintiff's claims are dismissed, except Plaintiff's procedural due process claim.

This, the 20th day of August, 2014.

James A Beaty
United States District Judge